**Gerard Thomas OUIMETTE, Petitioner-Appellant,**

v.

**Francis A. HOWARD, Warden, Adult Correctional Institutions, Respondent-Appellee.**

**No. 72–1131.**

United States Court of Appeals, First Circuit.

Argued Sept. 12, 1972.

Decided Nov. 2, 1972.

William G. Gilroy, Providence, R. I., with whom John F. Sheehan, Providence, R. I., was on brief, for appellant.

Donald P. Ryan, Asst. Atty. Gen., with whom Richard J. Israel, Atty. Gen., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and HAMLEY,* Circuit Judges.

HAMLEY, Circuit Judge.

Gerard Thomas Ouimette, under state penal custody in Rhode Island, appeals from a district court order denying his petition for a writ of habeas corpus. For the reasons stated below we affirm.

The facts are substantially undisputed. On January 8, 1968, Ouimette left a 1967 white Cadillac automobile parked illegally in front of a building in the City of Providence, in such a way as to obstruct traffic. A portion of this building is rented by the 13th Ward Independent Club (Club). This Club is chartered by the State of Rhode Island for the purpose of advancing the social, economic and political betterment of the 13th Ward. An adult female was seated in a passenger seat of the Cadillac.

While the automobile was so parked, two state police officers came upon the scene. One of them, Detective Vincent Vespia, Jr., recognized the automobile as one customarily driven by Ouimette. On two prior occasions this officer had found the same car illegally parked in the vicinity of the Club. On these prior occasions Detective Vespia entered the Club unhindered and unchallenged for the purpose of requesting Ouimette to move the car. On one such occasion Ouimette had personally moved the Cadillac; on the other he had given the automobile keys to another person for that purpose.

Relying upon his previous experience, Detective Vespia, accompanied by his partner, Detective Cunningham, opened the unlocked door of the Club and entered for the purpose of requesting Ouimette to move his automobile. No one questioned their entry at that time. Ouimette was well known to both officers and they were fully aware that he had a criminal record, including conviction of a crime of violence. Immediately after entering the Club, the detectives saw Ouimette standing by a bar in a general area of the Club along with several other men.

* Of the Ninth Circuit, sitting by designation.

Ouimette was holding a revolver in his hand, having just received it from another man at the bar. This was a violation of Rhode Island G.L.1956, § 11–47–5, as amended, forbidding one to possess a firearm after conviction of a crime of violence. The officers therefore immediately arrested Ouimette and seized the firearm. Ouimette was later convicted in a Rhode Island Superior Court for violation of G.L.1956, § 11–47–5, and that conviction was affirmed by the Rhode Island Supreme Court. State v. Ouimette, 274 A.2d 732 (R.I. 1971).

Ouimette then commenced this habeas corpus proceeding. He asserts that his state court conviction is based upon evidence, namely the weapon and officers' testimony concerning their observations within the Club, obtained in violation of the Fourth and Fourteenth Amendments. In an opinion reported at 339 F.Supp. 1166 (D.R.I.1972), the district court denied the petition, holding that the officers' entry into the Club for the purpose of requesting Ouimette to move his automobile was, under the circumstances, "justifiable," and that the offense of which Ouimette was convicted was committed in the plain view of the officers after they made this proper entry. On this appeal, Ouimette disputes the district court's rationale and all alternative grounds for affirmance urged by appellee.

If the officers were properly in the general area of the Club quarters where the bar was located, they were entitled to seize the weapon and testify concerning their observations there, since the weapon and the events concerning which they testified were within the officers' plain view. This is true because, in that event, the intrusion which made the plain view possible was justified and, under the facts, the discovery of the evidence was inadvertent. Coolidge v. New Hampshire, 403 U.S. 443, 466, 469, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

In our opinion, the officers were properly in a general area of the Club on the occasion in question. At least insofar as this area of the Club is concerned, Ouimette had no reasonable expectation of privacy, to employ a concept adopted by the Supreme Court in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967). The outer door of the Club was not locked, nor was there, at least on this occasion, a doorman to keep out non-members. The president of the Club testified that anyone accompanying a member could enter if "they got a nice face." Detective Vespia had, in fact, entered this area of the Club on two prior occasions for the same purpose that caused him to enter on January 8, 1968. On each of those occasions he entered without challenge or apparent criticism. On January 8, 1968, Ouimette knew of those prior entries since he was the person the officer had contacted in the Club.

In addition, the business which caused the officers to enter the Club on January 8, 1968, was legitimately connected with their duties, and was not for the purpose of arresting anyone or conducting a search or seizure. Under R.I.G.L. 1956, § 31–21–2, the two officers were authorized to move the illegally-parked vehicle, or to require the driver thereof to move the car.

We have purposely refrained from casting this discussion in the form of an inquiry as to whether the officers, while on the Club's premises, were trespassers or licensees. Recent decisions of the Supreme Court indicate that the solution of such problems as presented by this case are not promoted by application of property law concepts. Having regard for the purposes to be served by the Fourth Amendment, made applicable to the states by the Fourteenth, the relevant inquiry is whether what happened defeated Ouimette's reasonable expectation of privacy. See Katz, supra. As indicated above, we do not believe it did.

Ouimette suggests that the officers could have taken other steps to have the Cadillac moved, short of entering the Club. They might have asked the fe-

male passenger to move the vehicle (assuming she had an ignition key); they might have blown the horn in an effort to attract Ouimette's attention; they might have called a tow truck. While these alternative courses may have been available we do not believe the officers were obliged to adopt one or more of them, rather than entering the Club to contact Ouimette. This had proved an effective means of having the car moved on two previous occasions and it was reasonable for the officers to follow the same procedure on January 8, 1968.

Affirmed.