11 P.3d 1120

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Kelly Joe GEISSLER, Defendant-Appellant.**

No. 25613.

Court of Appeals of Idaho.

Oct. 5, 2000.

Alan E. Trimming, Ada County Public Defender; David J. Smethers, Deputy Public Defender, Boise, for appellant. David J. Smethers argued.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

PERRY, Chief Judge.

Kelly Joe Geissler appeals from a judgment of conviction, entered pursuant to his I.C.R. 11 plea of guilty, for possession of a controlled substance. I.C. § 37–2732(c). Geissler challenges the district court's denial of his motion to suppress. We affirm.

## I.

## BACKGROUND

On October 10, 1998, two Boise City police officers responded to a report of possible narcotics use by two men inside a pickup in a parking lot at a fast food restaurant. The dispatch included the pickup's license plate number. Upon the arrival of the first officer, the two men exited the vehicle and began to walk away. The first officer contacted the individuals and determined that one of them was Kelly Joe Geissler. After being advised that Geissler had an outstanding warrant, the first officer arrested him.[1]

Prior to arriving at the scene, the second officer learned of Geissler's arrest warrant and that the license plate number conveyed in the original dispatch belonged to a Subaru automobile. At the scene, the second officer checked the pickup's license plate number and confirmed that it matched the license plate number of the Subaru. The second officer proceeded to question Geissler about the pickup's license plates. Geissler informed the officer that he owned the pickup and had switched the license plates from another one of his vehicles. The second officer continued to investigate the fictitious plates. Because the vehicle was an older model pickup, the vehicle identification number (VIN) was located on the doorjamb and could not be seen through the windshield. Therefore, the second officer opened the driver's side door of the pickup in order to check the VIN. Upon opening the door, the second officer observed in plain view a split-open soda can sitting on the driver's floorboard. This indicated to the officer narcotics use. The second officer then looked up and saw the first officer conducting a search on the passenger side of the vehicle, and was informed by the first officer that her search

---

1. The other individual also had an outstanding warrant and was likewise arrested.

had revealed a syringe.[2] A subsequent search of the vehicle yielded heroin and paraphernalia.

Geissler was charged with felony possession of a controlled substance and misdemeanor possession of paraphernalia. The state also alleged that Geissler was a persistent violator. Geissler unsuccessfully moved for suppression of the evidence seized from the pickup. Thereafter, pursuant to an I.C.R. 11 plea agreement with the state, the paraphernalia charge and the persistent violator allegation were dismissed and Geissler pled guilty to possession of a controlled substance, reserving his right to appeal the denial of his suppression motion.

## II.

## ANALYSIS

### A. Standard of Review

█ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which were supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996).

### B. Search for VIN Number

█ Geissler argues that the denial of his motion to suppress evidence should be overturned on appeal. Geissler asserts that the second officer's search for the VIN number was unlawful and, therefore, the evidence discovered pursuant to that search should have been suppressed by the district court. The Fourth Amendment requires that all searches and seizures be reasonable. *State v. Murphy*, 129 Idaho 861, 863, 934 P.2d 34, 36 (Ct.App.1997). Warrantless searches and seizures are considered unreasonable per se unless they come within one of the few specifically established and well-delineated exceptions to the warrant requirement. *California v. Acevedo*, 500 U.S. 565, 580, 111

S.Ct. 1982, 1991, 114 L.Ed.2d 619, 634 (1991); *State v. Henderson*, 114 Idaho 293, 295, 756 P.2d 1057, 1059 (1988).

The United States Supreme Court specifically addressed the issue of whether a police officer's inspection of a car to obtain a VIN violates the Fourth Amendment in *New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). In *Class*, the Supreme Court determined that in light of the important role VIN's play in the pervasive governmental regulation of automobiles, a "motorist must surely expect that ... regulation will on occasion require the State to determine the VIN of his or her vehicle." *Id.* at 113, 106 S.Ct. at 965, 89 L.Ed.2d at 89. This fact, coupled with the diminished expectation of privacy inherent in automobiles generally, led the Supreme Court to hold that there is no reasonable expectation of privacy in a VIN. *Id.* at 114, 106 S.Ct. at 966, 89 L.Ed.2d at 90.

However, the evidence introduced against Class was not the VIN, but a weapon discovered during the officer's inspection of the VIN. Thus, the Supreme Court went on to analyze whether the actions by the officer in reaching into the automobile were constitutionally permissible. The Court discussed the various safety concerns inherent in a traffic stop, and balanced the governmental interest against that of the individual. The Court noted that the safety of the officers was served by the governmental intrusion, the intrusion was minimal, and the search stemmed from some probable cause focusing suspicion on the individual affected by the search. *Id.* at 117–18, 106 S.Ct. at 967–68, 89 L.Ed.2d at 92–93. Based on the facts of the case, the Court held:

[The] search was sufficiently unintrusive to be constitutionally permissible in light of the lack of a reasonable expectation of privacy in the VIN and the fact that the officers observed respondent commit two traffic violations. Any other conclusion would expose police officers to potentially grave risks without significantly reducing the intrusiveness of the ultimate conduct—

**2.** The district court found the first officer's entry to be unconstitutional, and the state does not challenge this finding on appeal.

viewing the VIN—which, as we have said, the officers are entitled to do as part of an undoubtedly justified traffic stop.

*Id.* at 119, 106 S.Ct. at 968, 89 L.Ed.2d at 93.

■ Geissler does not argue that the evidence should be suppressed under the fruit of the poisonous tree doctrine in connection with the first officer's search. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).[3] Geissler's sole argument concerns the lawfulness of the second officer's search of the pickup for the VIN number. Geissler argues that because the pickup was of no legal consequence to the interaction between himself and the officers, and because there was no traffic violation observed by the officers, the inspection of the VIN amounted to an unreasonable search. In making that assertion, Geissler fails to take into account his admitted fictitious display of a license plate.

After arriving at the scene, the second officer confirmed the license plate number and observed that the plates were not on a Subaru automobile. After questioning Geissler about this discrepancy, the officer was informed that Geissler owned the pickup, but had removed the plates from another one of his cars and placed them on the pickup. Idaho Code Section 49–456(2) makes it unlawful for any person to "display or cause or permit to be displayed, or to have in possession any registration card or license plate knowing the same to be fictitious or to have been cancelled, revoked, suspended or altered." The officer decided to investigate further to ascertain whether the pickup was stolen. In light of Geissler's admission that the plates did not belong on the pickup, and the officer's determination that the license plates belonged to a Subaru, the officer's decision to investigate further was reasonable.

Geissler also asserts that *Class* is inapplicable to the facts of this case given the absence of a traffic violation. Although there was no traffic stop in this case, the other factors addressed by the Supreme Court in *Class* are present. The officer's initial intrusion in this case was minimal—the officer opened Geissler's door to view the VIN. The officer then only searched the vehicle after observing in plain view alleged paraphernalia. The officer's search stemmed from probable cause focusing suspicion on Geissler, who was the individual affected by the search. In this case, Geissler openly admitted that the pickup's license plates were fictitious and that he had switched the plates from another one of his cars. The officer also knew that Geissler had a warrant out for his arrest. Additionally, the district court found that there was no VIN on the dash plate of Geissler's pickup, thereby requiring the officer to open the pickup's door in order to view the doorjamb area and ascertain the vehicle's VIN. As stated by the Fifth Circuit in *United States v. Johnson,* 413 F.2d 1396 (5th Cir.1969):

[The officer's] checking of the number of the vehicle was mere routine. In this highly motorized age with millions of vehicles traversing the nation's highways and the mounting number of automobile thefts and related crimes, it would tax the imagination if we were to consider under these circumstances that a visual inspection by [a police officer] of a car identification number constituted a search, much less an illegal search. The Fourth Amendment constitutional prohibition is against unreasonable searches and seizures.

*Id.,* at 1399. *See also United States v. Polk,* 433 F.2d 644 (5th Cir.1970).

Although we recognize that there may arise situations in which an officer's search of a vehicle for a VIN could be determined unconstitutional, under the facts of this case it was not a constitutional violation for the officer to exercise his discretion to check to see if the vehicle was stolen.[4] Therefore, we

---

3. We note that the record indicates that the searches occurred contemporaneously. Because the record reflects that the second officer discovered the soda can prior to being informed by the first officer of her discovery of the syringe, the fruit of the poisonous tree doctrine does not appear to be applicable.

4. Federal law requires that the VIN in all vehicles manufactured after 1969 be placed in plain view of someone outside the automobile. *See Class,* 475 U.S. at 112, 106 S.Ct. at 965, 89 L.Ed.2d at 89.

conclude that it was reasonable for the second officer to open Geissler's door to check the VIN.

Because we have determined that opening the door of the vehicle to check the VIN did not rise to the level of a constitutionally prohibited search, we conclude that the officer was in a place where he had a lawful right to be when he observed the contraband. Therefore, the officer's subsequent discovery of the evidence will not be suppressed.

## III.

### CONCLUSION

The district court did not err in denying Geissler's motion to suppress. Accordingly, Geissler's judgment of conviction is affirmed.

Judge SCHWARTZMAN and Judge Pro Tem CARLSON concur.