162 P.3d 776

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Christina D. METZGER, Defendant– Appellant.**

No. 32813.

Court of Appeals of Idaho.

May 23, 2007.

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant. Justin M. Curtis argued.

Hon. Lawrence G. Wasden, Attorney General; Ralph R. Blount, Deputy Attorney General, Boise, for respondent. Ralph R. Blount argued.

SCHWARTZMAN, Judge Pro Tem.

Christina D. Metzger appeals from her judgment of conviction for possession of methamphetamine. We affirm.

## I.

### FACTS AND PROCEDURE

Spotting a truck being driven around midnight without its headlights on, a Cassia County sheriff's deputy pulled the vehicle over. Metzger, the driver, was unable to produce a current driver's license, proof of insurance, or vehicle registration. She explained that she was in the process of purchasing the vehicle and provided the name and phone number of the alleged seller.

The deputy checked the vehicle identification number (VIN) on the dashboard by looking through the windshield and, to determine whether it matched, opened the driver's side door to find the VIN located on the door-jamb. He testified this was his standard procedure when encountering drivers unable

to produce requisite documentation.[1] In the process of checking both VINs, the deputy shined a flashlight inside the cab and saw marijuana seeds on the driver's side floorboard. He then walked his drug detection dog around the car and when the dog alerted on the driver's and passenger's side doors and driver's side floorboard, he proceeded to search the truck and found a small container of marijuana, more marijuana seeds, and drug paraphernalia. When Metzger was arrested and later searched at the Mini–Cassia Criminal Justice Center, two small bags of methamphetamine were discovered on her person.

Metzger was charged with possession of a controlled substance, methamphetamine, Idaho Code § 37–2732(c)(1), and filed a motion to suppress evidence. The district court denied the motion as to the physical evidence, but granted it in regards to statements made by Metzger to the deputy. She subsequently entered a conditional guilty plea, preserving her right to appeal from the denial of the motion to suppress. This appeal followed.

## II.

## ANALYSIS

■ On appeal, Metzger contends the district court erred in denying her motion to suppress because the deputy's act of opening the driver's side door to examine the VIN on the door frame amounted to a search not supported by probable cause. Thus, she asserts, any evidence found after the allegedly illegal search must be suppressed as fruit of the poisonous tree.

■ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Geissler*, 134 Idaho 902, 904, 11 P.3d 1120, 1122 (Ct.App.2000); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996).

■ The Fourth Amendment, as well as the Idaho Constitution, require that all searches and seizures be reasonable. *Geissler*, 134 Idaho at 904, 11 P.3d at 1122; *State v. Murphy*, 129 Idaho 861, 863, 934 P.2d 34, 36 (Ct.App.1997). Warrantless searches and seizures are considered unreasonable per se unless they come within one of the few specifically established and well-delineated exceptions to the warrant requirement. *California v. Acevedo*, 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619, 634 (1991); *State v. Henderson*, 114 Idaho 293, 295, 756 P.2d 1057, 1059 (1988). However, such constitutional protections apply only to a person's reasonable expectation of privacy—one which the party subjectively held and which society is willing to recognize as reasonable. *State v. Christensen*, 131 Idaho 143, 146, 953 P.2d 583, 586 (1998); *State v. Morris*, 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct.App. 1998). Thus, we inquire whether a "search," as protected by the federal and Idaho Constitutions, actually occurred when the deputy opened the door to examine the doorjamb VIN.

The state argues our decision in *Geissler* controls. In that case, we discussed the United States Supreme Court's analysis in *New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986), of whether a police officer's inspection of a car to obtain a VIN violates the Fourth Amendment. In *Class*, the officer opened the door to see if there was a VIN on the doorjamb, and finding none, reached through the open door and moved papers covering the dashboard VIN. In the process, he spotted a gun partially obscured under the driver's seat. After being arrested, the driver moved to exclude the gun from evidence. The Court determined that in light of the pervasive governmental regulation of vehicles, a "motorist must surely expect that . . . regulation will on occasion require the State to determine the VIN of his or her vehicle." Id. at 113, 106 S.Ct. at 965, 89 L.Ed.2d at 90. This fact, in conjunction with the diminished expectation of priva-

---

1. Idaho Code Section 49–427 requires the registration card issued for a vehicle to be in the driver's possession when the vehicle is being operated on public roads and makes the card subject to inspection by any peace officer. Idaho Code Section 49–421 mandates that registration cards include the corresponding vehicle's identification number.

cy inherent in automobiles generally, caused the Supreme Court to conclude there is no reasonable expectation of privacy in a VIN. *Id.* at 114, 106 S.Ct. at 966, 89 L.Ed.2d at 90. We continued our analysis of *Class:*

> However, the evidence introduced against Class was not the VIN, but a weapon discovered during the officer's inspection of the VIN. Thus, the Supreme Court went on to analyze whether the actions by the officer in reaching into the automobile were constitutionally permissible. The Court discussed the various safety concerns inherent in a traffic stop, and balanced the governmental interest against that of the individual. The Court noted that the safety of the officers was served by the governmental intrusion, the intrusion was minimal, and the search stemmed from some probable cause focusing suspicion on the individual affected by the search. *Id.* at 117–18 [106 S.Ct. at 967–68, 89 L.Ed.2d at 92–93]. Based on the facts of the case, the Court held:

> > [The] search was sufficiently unintrusive to be constitutionally permissible in light of the lack of a reasonable expectation of privacy in the VIN and the fact that the officers observed respondent commit two traffic violations. Any other conclusion would expose police officers to potentially grave risks without significantly reducing the intrusiveness of the ultimate conduct—viewing the VIN— which, as we have said, the officers are entitled to do as part of an undoubtedly justified traffic stop.

> *Id.* at 119 [106 S.Ct. at 968, 89 L.Ed.2d at 93].

*Geissler,* 134 Idaho at 904–05, 11 P.3d at 1122–23.

In *Geissler,* as officers commenced investigating a report of a possible narcotics transaction at a fast food restaurant parking lot, the appellant was arrested on a warrant while he was exiting a pickup. An officer learned through dispatch that the license plate number was not registered to the vehicle in question. While investigating this discrepancy, an officer opened the driver's side door to locate the VIN which, since it was an older vehicle, could not be seen on the dash-

board through the windshield. Upon opening the door, the officer observed in plain view on the driver's side floorboard a split open soda can which indicated narcotics use. A subsequent search uncovered heroin and paraphernalia in the truck. Despite Geissler's arguments to the contrary, we concluded the case was not distinguishable from *Class* and affirmed the validity of the officer's unearthing of the VIN and incidental viewing of the can by opening the door. *Geissler,* 134 Idaho at 905–06, 11 P.3d at 1123–24.

Metzger contends that for several reasons *Class* and *Geissler* are distinguishable from her case and consequently should not validate the deputy's opening of her door to ascertain the doorjamb VIN. Specifically, she argues that in *Geissler,* this Court emphasized there was no visible VIN on the dashboard of Geissler's pickup, thus necessitating the officer's opening of the door to view the doorjamb VIN. In contrast, here the deputy testified that prior to opening Metzger's car door, he had already looked at the VIN on the dashboard and was seeking to compare and verify that number with the VIN located on the doorjamb. She points out that in *Class,* the Supreme Court specifically stated that "our holding today does not authorize officers to enter a vehicle to obtain a dashboard-mounted VIN when the VIN is visible from the outside." 475 U.S. at 119, 106 S.Ct. at 968, 89 L.Ed.2d at 94. Thus, she concludes, *Class* and its Idaho counterpart are inapposite to the case at hand.

We disagree. The Class Court made clear that an officer does not enter a passenger compartment by merely examining the doorjamb VIN while standing outside the vehicle. 475 U.S. at 118, 106 S.Ct. at 968, 89 L.Ed.2d at 93. It began by noting that (1) the officer could lawfully require the driver to open the door and exit the vehicle and (2) he could lawfully approach the car and view the dashboard through the windshield. Thus, it reasoned, both locations are "ordinarily in plain view of someone outside the automobile" and *not subject to a reasonable expectation of privacy.* *Id.* The Court did caution that "[i]f the VIN is in the plain view of someone outside the vehicle, there is no justification

for governmental intrusion into the passenger compartment to see it." Id. at 119, 106 S.Ct. at 968–69, 89 L.Ed.2d at 94. But prior to doing so, it made a clear distinction between merely viewing a VIN in one of two places (the dashboard or doorjamb) which were not subject to a reasonable expectation of privacy and the actual physical intrusion of the officer into the passenger compartment of the vehicle to move an object obscuring the VIN—an act which is considered a search and subject to Fourth Amendment strictures. See United States v. Chavira, 467 F.3d 1286, 1289 n. 1 (10th Cir.2006) (making this distinction). Consequently, the "intrusion" discussed in Class as being inappropriate if the VIN is already visible to someone outside the vehicle refers to a physical entrance into the passenger compartment, not the mere act of looking at the VIN on the doorjamb while standing outside a vehicle. Similarly, while this Court did mention in Geissler the fact there was no VIN on the vehicle's dashboard, thus requiring the officer to open its door to view the doorjamb area, this was not a dispositive point, but merely a factor examined in the larger reasonableness discussion. Where, as here, a driver fails to produce a valid driver's license, proof of insurance, and registration, we see no reason to prohibit an officer from checking both the dashboard and doorjamb VINs as a precaution to ensure that the vehicle is not stolen. As the Class Court made clear, both of these places are often in public view and not subject to a recognized expectation of privacy.

■ We note that such a holding is entirely consistent with a distinct but relevant line of cases concluding there is no cognizable privacy right in the portion of a vehicle's interior that can be viewed from the outside by either "inquisitive passersby or diligent police officers" and that an officer's use of a flashlight to illuminate the darkened interior of a vehicle does not raise the observation to the level of a search. Texas v. Brown, 460 U.S. 730, 740, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502, 512 (1983). Accord State v. Prewitt, 136 Idaho 547, 551, 38 P.3d 126, 130 (Ct.App.2001); State v. Ramirez, 121 Idaho 319, 322, 824 P.2d 894, 897 (Ct.App.1991); State v. Loyd, 92 Idaho 20, 23–24, 435 P.2d

797, 800–01 (1967). Only if an officer has gained a view of items as a direct result of an intrusion into a place where a privacy interest exists must the officer justify the intrusion as lawful police policy. Brown, 460 U.S. at 736–37, 103 S.Ct. at 1540–41, 75 L.Ed.2d at 509–10; Ramirez, 121 Idaho at 322, 824 P.2d at 897. Thus, given our recent analysis in Irwin that, within their power to order occupants out of a vehicle during a legitimate traffic stop, an officer may open the vehicle door himself; the deputy in this case would have been within his discretion to not only order Metzger out of the vehicle, as he would later do, but to open the door himself to enable her exit. State v. Irwin, 143 Idaho 102, 105–06, 137 P.3d 1024, 1027–28 (Ct.App. 2006) (expanding on Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), which held during a lawful traffic stop an officer may order an occupant from the vehicle). Such an act would have exposed no less of the vehicle's interior to his view than what he saw here while opening the door for a different, but still valid, purpose. As we stated in Irwin, "it is constitutionally irrelevant whether the officer or the occupant opens the car door . . . ." 143 Idaho at 106, 137 P.3d at 1028.

Ultimately, the deputy engaged in an action, opening the door and looking for the VIN in a location which Class unequivocally indicated was not subject to a reasonable expectation of privacy, that was minimally invasive. And since he did not extend his actions into a search by physically intruding into the passenger compartment, there is no need to assess the reasonableness of his actions under further constitutional principles.

■ Finally, Metzger contends that even if she did not have an expectation of privacy in the VIN on the doorjamb, she retained an expectation of privacy in the vehicle's interior which the deputy violated. Pointing to the deputy's testimony at the suppression hearing—"I shined my flashlight inside the vehicle, kind of a safety precaution I guess to see if I can see anything while looking at the VIN . . . ."—she argues he did more than merely look at the VIN and thus, engaged in an unauthorized search. We disagree with

this characterization based on our discussion above that an officer's examination of the vehicle's interior, standing outside the vehicle and aided by a flashlight, is not a "search" in the Fourth Amendment sense. Similarly, in *Geissler* we allowed admission of drug paraphernalia which the officer noticed, after lawfully opening the door, in exactly the same spot as this case-the driver's side floorboard. 134 Idaho at 903, 906 11 P.3d at 1121, 1124. For these reasons, we reject Metzger's contention that the deputy's actions evolved into a constitutionally prohibited search requiring probable cause to be valid.

### III.

### CONCLUSION

Metzger lacked a recognized privacy interest in the VIN number located on the doorjamb of the vehicle. In addition, the deputy's invasion was minimal and can be justified on the grounds that an officer may open a vehicle's door to order the driver out or inspect a VIN and that glancing around the interior of a vehicle visible from the outside, including the use of a flashlight, does not constitute a search. Accordingly, the district court did not err in denying Metzger's motion to suppress, and we affirm her judgment of conviction for possession of methamphetamine.

Chief Judge PERRY and Judge LANSING concur.

