# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3732

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| Javarlo Lasha Perry, | * | |
| also known as Earl Junior Hunter, | * | |
| also known as Derrick Lamar Brown, | * | |
| also known as David Harvey, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: October 15, 2008
Filed: November 24, 2008

_____

Before BYE, JOHN R. GIBSON, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Javarlo Lasha Perry appeals his sentence and conviction for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  We affirm.

I

On October 17, 2006, police officers received a tip from a confidential informant that Javarlo Perry was inside a Veteran of Foreign Wars ("VFW") hall in St. Paul, Minnesota, wearing a bullet-resistant vest and carrying narcotics. When the officers approached the VFW, they observed a group of eight people standing outside the door. As members of that group entered the hall through the open door, several officers followed. The officers did not ask for permission to enter the VFW, nor did they seek permission to remain there once inside.

After they entered, no one challenged the officers' presence; the only person who spoke with the officers asked, "What's going on . . . is there a problem . . . can I help you with something?" The officers observed a stage to their immediate right covered by a projection screen. As one of the officers approached the stage, he heard male voices coming from behind the screen. Looking behind the screen through a twelve- to sixteen-inch opening between the screen and the wall, the officer observed Perry conversing with another man. Perry saw the officer, and he withdrew a firearm from his waistband and placed it in an adjacent media cabinet. The officers then arrested Perry and seized the gun from the media cabinet. A search of Perry outside the VFW revealed crack cocaine, which tests later determined weighed 3.53 grams.

Perry was indicted with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Perry moved to suppress the firearm as the fruits of a Fourth Amendment violation, arguing the VFW's "members-only" admissions policy provided him with an expectation of privacy therein. A magistrate judge[1] conducted a hearing on Perry's motion to suppress. Several of the officers testified the VFW is a "members-only" establishment where the door is regularly locked. Anyone seeking to enter must press a buzzer, at which point someone inside

---

[1]The Honorable Susan Richard Nelson, United States Magistrate Judge for the District of Minnesota.

the hall, who is presumably monitoring the door with a camera, can press a button to unlock the door. In the past, officers have sometimes had to wait a few moments to enter before the door was unlocked. The VFW does not maintain someone at the door to verify compliance with whatever admissions policy is in place. Perry did not testify at the suppression hearing. As such, there is no evidence how Perry entered the VFW that night, whether he is a member of the VFW, or whether his admission that night was in compliance with whatever limited admissions policy is allegedly enforced.

The magistrate judge recommended denying Perry's motion to suppress, concluding Perry lacked standing to challenge the search of the VFW during which his gun was seized. Perry objected, and the district court[2] adopted the magistrate judge's report and recommendation. At trial, Perry stipulated the firearm had crossed state lines. A jury convicted Perry of being a felon in possession of a firearm. At sentencing, the district court applied a four-level enhancement to Perry's base offense level under U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2K2.1(b)(6) for possessing a firearm in connection with another felony offense – in this case, drug possession or drug trafficking. This resulted in a guideline range of 92 to 115 months, and the district court sentenced Perry to 92 months imprisonment.

On appeal, Perry's counseled brief argues the district court erred in denying his motion to suppress. In a supplemental pro se brief, Perry argues the court committed error in allowing a magistrate judge to rule on his motion to suppress, in convicting him based on an unconstitutional statute, and in imposing the § 2K2.1(b)(6) enhancement based on facts not found by a jury.

---

[2]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

## II

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Perry moved to suppress the firearm on the grounds that the police officers' search of the VFW, or more specifically the media cabinet where his firearm was found, violated his Fourth Amendment rights. Fourth Amendment rights, however, are personal and cannot be asserted vicariously. United States v. Green, 275 F.3d 694, 698 (8th Cir. 2001). Therefore, Perry's standing to challenge the search of a third party's premises depends upon "whether government officials violated any legitimate expectation of privacy held by [Perry]." Rawlings v. Kentucky, 448 U.S. 98, 106 (1980).

Perry "has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable; that is, one that society is willing to accept." United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999). Whether Perry had a subjective expectation of privacy is a question of fact, which we review under a clearly erroneous standard, and whether that expectation of privacy was objectively reasonable is a question of law, which we review *de novo*. United States v. Hayes, 120 F.3d 739, 743 (8th Cir. 1997).

Perry did not testify or put forward any evidence demonstrating his subjective expectation of privacy within the VFW, and the district court did not make a factual finding in this regard. We will assume, therefore, that Perry carried his burden of establishing a subjective expectation of privacy in the VFW hall. Nevertheless, Perry does not have standing to challenge the search because he has not met his burden of demonstrating his expectation of privacy was objectively reasonable. We have identified a number of factors relevant to this analysis: "whether the party has a possessory interest in the things seized or the place searched; whether the party can

-4-

exclude others from that place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises." McCaster, 193 F.3d at 933.

At its core, the VFW is a commercial establishment. Notably, "[a]n expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home." New York v. Burger, 482 U.S. 691, 700 (1987). We find it indisputable that someone present in a commercial establishment in an area open to the general public has no objectively reasonable expectation of privacy therein. See Lewis v. United States, 385 U.S. 206, 211 (1966) ("A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant."). Therefore, if the VFW was a typical commercial establishment, Perry would have no expectation of privacy in the portions of the hall open to the public, including the media cabinet where his firearm was found.

Perry argues, however, his expectation of privacy in the VFW was greater because it is a "members-only" establishment not open to the general public. As such, Perry contends, the restrictive admissions policy creates an objectively reasonable expectation of privacy therein. This argument fails for several reasons. First, Perry did not put forward any evidence demonstrating the nature of the alleged "members-only" policy. Although several officers testified they regarded the VFW as a "members-only" establishment, there is no evidence what policy the VFW has in place with respect to the admission of non-members. If the VFW does not actually have a policy restricting admission, then it is no different than a typical commercial establishment open to the general public. Perry's failure to develop the record in this regard is fatal since he "has the burden of showing a legitimate expectation of privacy in the area searched." United States v. Pierson, 219 F.3d 803, 806 (8th Cir. 2000).

Second, Perry did not put forward any evidence demonstrating he was a member of the VFW or was entitled to be present under whatever "members-only"

policy was allegedly enforced. It is entirely possible Perry entered the VFW in the same manner, and in equal contravention of the policy he relies upon, as the officers whose conduct he seeks to challenge; in such a circumstance, we fail to see how Perry can have an objectively reasonable expectation of privacy based on a restrictive admissions policy that his very presence violates.

Finally, there is no evidence even if the VFW did have an admissions policy under which Perry was entitled to be present, that the policy was strictly enforced in the past. See Ouimette v. Howard, 468 F.2d 1363, 1365 (1st Cir. 1972) (holding lax enforcement of private club's privacy measures negates an expectation of privacy); Commonwealth v. Weimer, 396 A.2d 649, 652 (Pa. Super. Ct. 1978) (same). In fact, the only evidence presented at the suppression hearing was that officers in the past have been admitted into the VFW without incident, though they sometimes had to wait a few moments after pressing the buzzer. If the VFW did not effectively enforce its policy in the past, then Perry's expectation of privacy based on that policy is not objectively reasonable.

We do not decide today whether a member of a private club, which employs a restrictive admissions policy that it strictly and consistently enforces, has an objectively reasonable expectation of privacy therein. We conclude only that in this case Perry has failed to show there was a policy limiting admission, he was entitled to be present under that policy, and the policy was strictly and consistently enforced in the past. Because he bears the burden of demonstrating an objectively reasonable expectation of privacy, his failure to do so deprives him of standing to challenge the search. Therefore, the district court did not err in denying Perry's motion to suppress.

III

Perry has filed a supplemental pro se brief raising several more challenges to his conviction and sentence. We consider each in turn.

A

Perry argues the district court committed error in allowing a magistrate judge to rule on his motion to suppress. To support his argument, Perry relies on 28 U.S.C. § 636(b)(1)(A), which states "a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion . . . to suppress evidence in a criminal case . . . ." Perry's argument is without merit, however, because 28 U.S.C. § 636(b)(1)(B) allows a judge to "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A) . . . ." The magistrate judge did not determine Perry's motion to suppress under § 636(b)(1)(A); it issued a report and recommendation under § 636(b)(1)(B), which the district court adopted. Because this is allowed under § 636(b)(1)(B), the district court did not commit error.

B

Perry next argues the statute under which he was convicted, 18 U.S.C. § 922(g), was unconstitutional as applied to him. Section 922(g) makes it unlawful for a felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g). Perry argues his possession of the firearm in Minnesota alone was insufficient to satisfy the constitutionally required nexus between his possession and interstate commerce. This argument fails, however, because Perry stipulated the firearm was manufactured outside the state of Minnesota and was transported across state lines prior to his possession of it. We have repeatedly held this is sufficient to satisfy § 922(g). United States v. Sianis, 275 F.3d 731, 734 (8th Cir. 2002).

## C

Perry next argues the court erred in enhancing his base offense level under U.S.S.G. § 2K2.1(b)(6) based on facts not found by a jury in violation of his constitutional rights. The district court did not err, however, because it is allowed to make findings of facts under a preponderance of the evidence standard to support an enhancement to the guideline range so long as it treats the Guidelines as advisory. United States v. Sandoval-Rodriguez, 452 F.3d 984, 991 (8th Cir. 2006); United States v. Hines, 472 F.3d 1038, 1040 (8th Cir. 2007).

## IV

Accordingly, we affirm the judgment of the district court.

_____