**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35773**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2010 Opinion No. 13A |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: March 3, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| LARRY J. ASHWORTH, | ) | AMENDED OPINION |
| | ) | THE COURT'S PRIOR OPINION |
| Defendant-Respondent. | ) | DATED MARCH 1, 2010, IS |
| | ) | HEREBY AMENDED |

Appeal from the District Court of the Second Judicial District, State of Idaho, Clearwater County. Hon. John H. Bradbury, District Judge.

Order granting motion to suppress evidence, <u>reversed</u>.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for respondent. Erik R. Lehtinen argued.

---

GUTIERREZ, Judge

The state appeals from the district court's order granting Larry J. Ashworth's motion to suppress evidence. For the reasons set forth below, we reverse.

## I.

## FACTS AND PROCEDURE

Deputy Dustin Pulley received a call from dispatch saying that Ashworth's neighbor had reported hearing two gunshots coming from inside Ashworth's residence. Ashworth's neighbor called back a few minutes later, stating that Ashworth had left his residence driving a blue truck and was intoxicated and heading to an Alcoholics Anonymous (AA) meeting being held at the Weippe Senior Center.

Deputy Pulley and Detective Mitch Jared located a truck matching the neighbor's description in the parking lot of the senior center. They knocked on the door of the center, and

1

the AA meeting leader responded. The officers inquired as to Ashworth and the AA meeting leader informed them that Ashworth was "four sheets to the wind, and really drunk," but assured them that everything was "under control" and that the AA group could "handle this." Detective Jared instructed the AA meeting leader to step aside, and the officers entered the building. After questioning Ashworth, they instructed him to follow them outside.

Once outside, Ashworth admitted that he had been drinking and had driven to the senior center. In addition, he smelled strongly of alcohol, had unsure balance and slurred speech, and failed several field sobriety tests administered by the officers. He was arrested for driving under the influence, Idaho Code § 18-8004, and ultimately tested well over the legal limit after breath alcohol tests were administered.[1]

Due to the fact that he had received a prior DUI conviction and his alcohol concentration had been in excess of .20, Ashworth was charged with felony DUI, I.C. § 18-8004C. He moved to suppress all evidence arising from his detention, arguing that the officers did not possess reasonable, articulable suspicion that he had committed a crime such that their investigatory stop of him, leading to his seizure, was justified. After a hearing, the district court granted the motion, finding that Ashworth possessed a reasonable expectation of privacy in the AA meeting at the senior center and that while reasonable suspicion to detain Ashworth was present, the officers did not have probable cause to believe that he had acted in contravention of the DUI statute, and therefore, no exigency justified entry by the officers into the senior center. The state now appeals the court's grant of Ashworth's motion to suppress.

## II.

## ANALYSIS

The state argues that the district court erred in granting Ashworth's motion to suppress, specifically contending that Ashworth did not possess a reasonable expectation of privacy while he attended the AA meeting at the senior center and therefore, there was no police infringement on his Fourth Amendment rights. The state also contends that even if there existed a reasonable expectation of privacy, the officers' entry was justified by exigent circumstances. Since we conclude that the first issue is dispositive, we do not reach the second.

---

[1] Specifically, Ashworth tested at .274, .236, and .243 percent.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment, as well as the Idaho Constitution, require that all searches and seizures be reasonable. *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000); *State v. Metzger*, 144 Idaho 397, 399, 162 P.3d 776, 778 (Ct. App. 2007); *State v. Murphy,* 129 Idaho 861, 863, 934 P.2d 34, 36 (Ct. App. 1997). Warrantless searches and seizures are considered unreasonable *per se* unless they come within one of the few specifically established and well-delineated exceptions to the warrant requirement. *California v. Acevedo,* 500 U.S. 565, 580 (1991); *State v. Henderson,* 114 Idaho 293, 295, 756 P.2d 1057, 1059 (1988); *Metzger*, 144 Idaho at 399, 162 P.3d at 778. However, such constitutional protections apply only to a person's reasonable expectation of privacy--one which the party subjectively held and which society is willing to recognize as reasonable. *State v. Christensen,* 131 Idaho 143, 146, 953 P.2d 583, 586 (1998); *Metzger*, 144 Idaho at 399, 162 P.3d at 778; *State v. Morris,* 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct. App. 1998). Therefore, a Fourth Amendment analysis involves a determination of whether the defendant had an actual, subjective expectation of privacy and, if so, whether the defendant's expectation of privacy, when viewed objectively, was reasonable under the circumstances. *State v. Wilkins,* 125 Idaho 215, 222, 868 P.2d 1231, 1238 (1994); *State v. Fancher*, 145 Idaho 832, 837, 186 P.3d 688, 693 (Ct. App. 2008). An expectation of privacy is objectively reasonable when it is legitimate, justifiable, and one society should both recognize and protect. *Fancher*, 145 Idaho at 837, 186 P.3d at 693; *State v. Johnson,* 126 Idaho 859, 862, 893 P.2d 806, 809 (Ct. App. 1995). Such expectation of privacy must be more than a subjective expectation of not being discovered. *Rakas v. Illinois,* 439 U.S. 128, 143 n.12 (1978); *Fancher*, 145 Idaho at 837, 186 P.3d at 693; *State v. Spencer,* 139 Idaho 736, 738-39, 85 P.3d 1135, 1137-38 (Ct. App. 2004). The burden is on the defendant to prove the existence of a

legitimate expectation of privacy. *Fancher*, 145 Idaho at 837, 186 P.3d at 693; *State v. Dreier,* 139 Idaho 246, 251, 76 P.3d 990, 995 (Ct. App. 2003).

It is generally recognized that the public or private nature of an individual's location is an important factor in making the determination of whether an individual possessed a reasonable expectation of privacy at the time of the alleged governmental search or seizure. *Katz v. United States*, 389 U.S. 347, 351 (1967). However, the nature of a location will not show conclusively whether there was a reasonable expectation of privacy. *Id.* This is so because while courts have treated dwellings as "the area most resolutely protected by the Fourth Amendment" and, on the other end of the spectrum, have generally concluded that one does not have a reasonable privacy expectation in "public" areas, a reasonable expectation of privacy may exist in certain private areas within public places such as restrooms and fitting rooms, and an expectation of privacy may not be reasonable on certain "private" premises, such as areas of residential premises where there exists an implied invitation for the general public to utilize for access, *see State v. Reyna*, 142 Idaho 624, 627, 130 P.3d 1162, 1165 (Ct. App. 2005) (discussing the "implied invitation" for the general public to use access routes to a house such as pathways, driveways, parking lots, and similar areas). WAYNE R. LaFAVE, SEARCH AND SEIZURE 616 (4th ed. 2004).

Regardless of whether a location is public or private, an important issue in determining the existence of an expectation of privacy in a non-residential location (such as is implicated here) is whether the general public was "invited" to enter or whether that entry was restricted and, if so, the nature of the restriction. For example, it is possible that a club or other business that is operated for a select clientele may not be considered public, *see* LaFAVE, at 631, and charging admission to a closely restricted group does not necessarily convert premises into a public place, even though it may be a place of business. *Asher v. City of Little Rock*, 449 S.W.2d 933 (Ark. 1970). In this same vein, if a club is operated only for members of a particular organization, the "implied invitation" to enter that ordinarily applies to the general public on business and commercial premises extends only to such members. LaFAVE, at 631. *See also State v. Oregon City Elks Lodge No. 1189*, 520 P.2d 900 (Or. Ct. App. 1974) (holding that where the Elks club was open to members of other Elks lodges, no constitutional right was violated where a district attorney employed such a member as an undercover agent and had him gain entry to observe gambling). It has been held that the actual practice as to admitting persons into such facilities must be considered in making the determination of whether there was a justified

4

expectation of privacy therein. LaFAVE, at 631-32. For example, in *Ouimette v. Howard*, 468 F.2d 1363 (1st Cir. 1972), an officer had entered a social club to request that a person move an illegally parked car and while inside, saw evidence of a crime. The court concluded that the officer's entry did not violate a reasonable expectation of privacy held by Ouimette where the door of the club was not locked, the club did not employ a doorman to keep out non-members, and non-members frequently entered the club--including the officer in question on two prior occasions for the same purpose. *Id*. at 1365. *See also United States v. Perry*, 548 F.3d 688, 691 (8th Cir. 2008) (holding that the defendant's argument that his expectation of privacy inside a Veteran of Foreign Wars hall was greater than that of a typical commercial establishment because it was a "members-only" venue with a restrictive admissions policy failed because he had not put forth any evidence demonstrating the nature of the "members-only" policy actually in place with respect to the admission of non-members; if the hall did not actually have a policy restricting admission, then it would be no different than a typical commercial establishment open to the general public); *Commonwealth v. Cadoret*, 445 N.E.2d 1050 (Mass. 1983) (holding that the fact that premises are maintained as a club with a membership policy is not conclusive that the defendant had a reasonable expectation of privacy, because failure to enforce limitations on admittance would warrant the conclusion that the persons operating the club had no such expectation); *State v. Posey*, 534 N.E.2d 61 (Ohio 1988) (holding that a police officer's entry into an Eagles' Club with a club member was not a search because he entered as the guest of a non-member as could any member of the general public); *Commonwealth v. Weimer*, 396 A.2d 649 (Pa. Supr. 1978) (holding that although a private club had a one-way mirror and buzzer system, the practice was to release the door whenever the buzzer was pressed and therefore there was no reasonable expectation of privacy because for "all the owner and bartender knew, or apparently cared, the door might have been opening for a thief, a non-member, a uniformed officer, or, as in this case, a plain clothes trooper").

In concluding that Ashworth "enjoyed a legitimate expectation of privacy while participating in the Alcoholics Anonymous meeting," the district court stated:

> When the deputies entered the Senior Citizens' Center to detain Mr. Ashworth, he was attending an Alcoholics Anonymous meeting. Whether the Center was open to the public at other times is not the dispositive issue insofar as his expectation of privacy is concerned. The Fourth Amendment protects people, not places. *Katz v. United States*, 389 U.S. 347, 351 (1967)[.] As the *Katz* Court

pointed out, ". . . what [a person] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id.*

The test of whether Mr. Ashworth enjoyed an expectation of privacy, thus rests on both his and society's understanding of the privacy afforded by attendance at an AA meeting. That the meeting occurred in a place open to the public does not detract from the fundamental purpose of the meeting -- that the participants are free from prosecution and recrimination arising from their participation. While AA groups are open to all who wish to attend, they are not public affairs at which spectators are welcome. The meetings are purpose-driven; those wishing to attend are welcome insofar as they seek to aid in the recovery of other members of the group. Certainly, if a group member admitted during a meeting that he had driven to the meeting while drunk, neither society nor members would consider that information public currency. The nature of Alcoholics Anonymous conveys an objective understanding of a group that protects the anonymity of its members. Information imparted to the group in a meeting where the privacy of those attending is expected is intended to be held in confidence by other members. [The AA meeting leader's] effort to exclude Detective Jared from the meeting is a testament to that expectation.

When Mr. Ashworth arrived at the meeting, he did not knowingly expose himself to the public. He relied on the privacy implicit in the function of the group. The State must, therefore, demonstrate that it satisfies an exception to the warrant requirement of the Fourth Amendment.

(Footnote omitted).

The state contends that the district court erred in reaching this conclusion because Ashworth presented no evidence in the record to sustain these findings and that the court misapplied the reasonableness standard in regard to whether there is an objective expectation of privacy in attendance at AA meetings.

Upon review of the record, we conclude that the evidence presented at the suppression hearing does not show whether Ashworth had a legitimate expectation of privacy at the AA meeting, especially given the relative complexity of this area of the law. Such a determination would be fact-intensive and require more information than we are given, or than the district court possessed at the time it granted the suppression motion.[2] Not only was there no evidence presented that Ashworth possessed a subjective expectation of privacy, but there is little to no

---

[2] The dearth of evidence on this point is to be expected, because the defendant's motion, memorandum in support, evidence, and argument at the hearing focused solely on the existence of reasonable suspicion to detain Ashworth. It was the district court that *sua sponte* raised the expectation of privacy issue and noted the lack of evidence on the point after the presentation of evidence and during argument by counsel.

6

evidence in the record regarding whether such an expectation, if it existed, was reasonable. Specifically, the only evidence presented as to the nature of the building was that the officers considered it public.[3] Regardless of whether it was public or private, there was no evidence offered as to whether the general public was "invited" to enter or whether that entry was restricted and, if so, the nature of the restriction and whether it was enforced.[4] Furthermore, to the extent that the district court based its decision on the nature of AA meetings in general and the expectations of its participants, such a determination was not based on any evidence in the record, but rather, we can only assume, AA's general reputation. In fact, at the hearing, the court noted that no evidence had been presented on the point and that it "ha[d] no personal knowledge as to whether or not AA meetings are open to the public or not." This is not a proper factual basis for such a ruling--not only is there no way for us to discern the accuracy of the court's characterizations on the record before us, but the general characteristics of AA do not suffice to prove the particular practices of the AA group in question. *See Perry*, 548 F.3d at 691 (noting that even if the veterans hall had a restrictive admissions policy, there was no evidence presented that it had been strictly and consistently enforced in the past and thus would be sufficient to

---

[3]     Ashworth argues on appeal that the "evidence in the record makes it clear that the Senior Center, whether it is owned and operated by the local government and therefore, technically a 'public' building, or, instead, a private non-profit organization, a tribe, or some other entity, is one that is available for distinctly private functions." He bases this assertion on the fact that the events that Officer Pulley referred to in his testimony as those that he knew took place in the center--AA meetings, Narcotics Anonymous meetings, weddings, parties, and other "events that individuals put on there"--are not those that a "reasonable person would think of as being 'public' at all." That the officer only knew of (or only listed) these events taking place in the building is not conclusive evidence of the nature of the building--the officer did not testify that these were the only events taking place there to the exclusion of any public functions. It is just as likely that he offered them merely as examples of some of the events that are held there.

[4]     Ashworth contends that the fact that the door was closed and that the AA meeting leader blocked the officers' entry and indicated they were not welcome to enter was evidence that the meeting was intended to be private and was not a "public affair." Again, this evidence is not conclusive in regard to the nature of the meeting because (1) many "public" buildings have closed doors and (2) that the AA leader attempted to exclude police officers does not establish the private nature of a meeting as it speaks more to the AA meeting leader's desire that Ashworth not be arrested than being evidence that the general public was not allowed in the room.

validate an expectation of privacy).[5] Thus, we conclude that even assuming Ashworth *could* have standing to challenge the search at the meeting, he did not meet his burden to show as much in this instance.

Given the lack of evidence in the record to make a determination as to whether Ashworth had a reasonable expectation of privacy, we must determine the ramifications of such a void. In *State v. Hanson*, 142 Idaho 711, 719, 132 P.3d 468, 476 (Ct. App. 2006), this Court addressed a case where the state raised, for the first time on appeal, the issue of whether the defendant had a reasonable expectation of privacy such that he could challenge the search of a vehicle on Fourth Amendment grounds. We concluded that the evidence presented at the suppression hearing did not show whether Hanson had a legitimate expectation of privacy and while we remanded that case to allow Hanson to present evidence on the question of standing, we also stated:

> Defendants with suppression hearings occurring after publication of this opinion are on notice, however, that they must show in every case that they have standing to challenge the search or convince the State to so stipulate. A defendant who does not do so risks an appellate attack on his standing without further opportunity to present evidence related to his privacy interest. In the future, if the State successfully argues for the first time on appeal that the defendant did not show standing, we will not remand to give the defendant another opportunity to present evidence. . . .

*Id*. at 719-20, 132 P.3d 476-77. On this basis, we must reverse the district court's order granting Ashworth's motion to suppress.

The district court's order suppressing evidence is reversed, and this case is remanded for further proceedings.

Chief Judge LANSING and Judge MELANSON **CONCUR**.

---

[5]     Our decision today addresses only whether Ashworth had a reasonable expectation of privacy in the premises where the AA meeting was held such that the officers violated the Fourth Amendment by entering. We imply no opinion as to whether there may be a reasonable expectation of privacy in *communications* made during such meetings even when the premises are not private. These are two quite different inquiries. *See Katz v. United States*, 389 U.S. 347, 351 (1967) (holding that there was a reasonable expectation of privacy in a telephone conversation conducted in a public telephone booth). We note that much of the district court's analysis here focused on its view of the privacy of the communications of AA participants, which is not necessarily determinative of the privacy of the premises on which the meeting was held.