79 P.3d 157

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Robert LAFFERTY, Defendant–Appellant.**

No. 28669.

Court of Appeals of Idaho.

Oct. 13, 2003.

Whipple Law Office, Burley, for appellant. Kent D. Jensen argued.

Hon. Lawrence G. Wasden, Attorney General; Ralph Reed Blount, Deputy Attorney General, Boise, for respondent. Ralph Reed Blount argued.

WALTERS, Judge Pro Tem. .

Robert Lafferty was charged with possession of methamphetamine. Prior to trial, Lafferty filed a motion to suppress evidence obtained from a search within his home, arguing the search was illegal. After a hearing, the district court denied the motion. Following a jury trial, Lafferty was convicted of possession of methamphetamine. Lafferty appeals from both the denial of the motion to suppress evidence and the judgment of conviction. On appeal, Lafferty poses two issues: (1) whether the motion to suppress should have been granted because discovery of the methamphetamine was the result of an unlawful search; and (2) whether the conviction should be reversed because the State failed to establish a sufficient nexus between Lafferty and the methamphetamine to prove that he "possessed" methamphetamine. We reverse and remand.

**I.**

**FACTUAL AND PROCEDURAL SUMMARY**

Two police officers, Lieutenant Kindig and Deputy Nye, went to Lafferty's home to speak with him about some stolen property. An acquaintance of Lafferty's, Shane Richardson, had been previously arrested at the home, and there was reason to believe Richardson may have left stolen property at the residence. Lafferty was not a suspect in this criminal investigation.

The officers, who were not in uniform, knocked on the door and Alan Gunderson answered. The officers said they were there to speak with Lafferty. Gunderson told the officers to come in, and directed them upstairs to the home's living room area where Lafferty was sitting. Gunderson shouted, "Bobby, there's a couple guys here to see you." The officers proceeded upstairs. Upon arriving in the living room they saw Lafferty sitting in a chair with a shoebox lid

on the table in front of him. The lid contained what appeared to be marijuana.

The officers spoke with Lafferty, stating that they believed they had enough evidence to obtain a search warrant for the residence, but would prefer that Lafferty just cooperate with them, turn over any drugs in his possession, and participate in a controlled purchase at a later time. Lafferty agreed to work with the officers. The officers asked Lafferty if he had any methamphetamine. Lafferty denied having any methamphetamine, but admitted to having some marijuana and drug paraphernalia.

Lafferty proceeded to lead the officers through his home, locating and producing drug paraphernalia for the officers. Lafferty took the officers to his bedroom, where he removed a bag of marijuana from his dresser and gave it to the officers. Lafferty then admitted to having some methamphetamine, and searched for it in his nightstand. Lafferty was unable to locate the methamphetamine.

Lafferty and the officers returned to the living room, where Lafferty asked his guests, Gunderson and Grant Maupin, if they knew where the methamphetamine was. The two guests denied knowledge of the methamphetamine. One of the officers then asked Gunderson to get off the couch he was sitting on, and, lifting a cushion from the couch, the officer found a container containing a substance that eventually tested positive for methamphetamine.

Lafferty was charged with possession of methamphetamine, in violation of Idaho Code § 37–2732(c)(1). He filed a motion in the district court to suppress evidence obtained through the search of his home. A hearing was held, and Lafferty and Maupin testified for the defense. The State put into evidence the preliminary hearing transcript, containing testimony from the officers. The court found that Gunderson lacked actual authority to grant consent for the officers to enter the home. The court additionally held that Gunderson lacked apparent authority because the officers knew that Lafferty lived at the home and Gunderson did not. The court concluded the entry into the home was made without reliance on any authority and that the entry was therefore unlawful. However, the court found that subsequent to the initial entry into the home, Lafferty voluntarily consented to the search and that his consent was not the product of coercion or duress. On this basis, the court denied the motion to suppress evidence.

## II.

### MOTION TO SUPPRESS

Lafferty argues that the court erred in denying his motion to suppress because his consent to the officers' presence in his home was not given freely and voluntarily in light of the totality of the circumstances. Specifically, he asserts that his consent was a result of duress or coercion, and the exploitation of an unlawful entry into his home.

While the district court and the parties focused upon the authority possessed by Gunderson, the possibility that Lafferty's consent was obtained through coercion or duress, and the possibility that any initial taint from the officers' entry into the home was cured by intervening circumstances, we are not required to address those issues. We need not decide whether the initial entry was valid based upon Gunderson's invitation for the officers to enter, or whether Lafferty consented to the continued presence of the officers within his home. We conclude that the dispositive issue is whether Lafferty consented to any search of his home by the police officers beyond their observation of whatever was in plain view as they followed Lafferty through the house.

The review of a suppression motion presents mixed issues of fact and law. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. McCall*, 135 Idaho 885, 886, 26 P.3d 1222, 1223 (2001); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court.

*State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App.1999). This Court will look only at the evidence before the district court at the time of the motion to suppress, and not at evidence subsequently adduced at trial. *See State v. Whiteley,* 124 Idaho 261, 266, 858 P.2d 800, 805 (Ct.App.1993).

██ Although a warrantless entry or search of a residence is per se unreasonable and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *State v. Johnson,* 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta,* 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct.App.1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby,* 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct.App.1997). Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp,* 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App.1991). When consent to search a home is not explicit but must be inferred, the burden on the State of showing consent is "heaviest." *State v. Staatz,* 132 Idaho 693, 695, 978 P.2d 881, 883 (Ct.App.1999) (quoting *United States v. Shaibu,* 920 F.2d 1423 (9th Cir.1990)). As the United States Supreme Court stated:

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses ... shall not be violated."

*Payton v. New York,* 445 U.S. 573, 589, 100 S.Ct. 1371, 1381, 63 L.Ed.2d 639, 652 (1980).

In *Staatz,* 132 Idaho 693, 978 P.2d 881, a complaint of child abuse was made to the Shoshone County Sheriff's Department. The mother under investigation let an officer into the home. The officer explained what was going on, and the mother asked the officer to step outside so she could think. The officer refused to leave, claiming that the presence of a gun cabinet created a security concern.

The officer accompanied the mother to the child's bedroom to obtain clothes for the child. When it was determined that the child slept in the master bedroom, the officer accompanied the mother to that room. Bright lights coming from a closet and the smell of marijuana caused the officer to become suspicious, and the mother opened the closet, revealing her husband's marijuana grow operation. The district court denied a motion to suppress this evidence. On appeal, this Court held that the evidence was insufficient to establish that the mother had consented to the entry into her home. The only evidence in the record was testimony from the officer that the mother "let him inside her home." This Court held that such evidence was insufficient to establish consent to a warrantless entry of the home. *Compare, Abeyta,* 131 Idaho 704, 963 P.2d 387, where the defendant executed a written consent to search his home after the officers entered the defendant's home without a warrant and without express permission from the defendant to enter.

██ In this case, the district court found that Lafferty's consent to search was not given as the result of duress or coercion. Even assuming, however, that Lafferty impliedly consented to the officers following him through the home, the evidence in the record does not support a finding that Lafferty consented to any more intrusive search, such as looking under sofa cushions.

The evidence established without question that the officers were not in possession of a warrant which allowed them to search the couch, or any part of the home for that matter. At the preliminary hearing, the prosecutor engaged in the following colloquy with Lieutenant Kindig:

> State: And what was the nature of the conversation [with Lafferty] that was conducted downstairs then on December 2nd, when you were in [Lafferty's] home?

> Kindig: I told Robert that, you know, from what I saw and what was going on that I thought that I had enough to get a search warrant for his residence, if need be. I would prefer not to do that if he'd

be willing to work with us and turn over any other narcotics that he may have in the house.

State: Okay. When you said "work with you," what did you mean by that?

Kindig: I wanted him to work with us as far as turning over any controlled substance, and, second of all, possibly do a buy for us.

State: Okay. Controlled buy?

Kindig: That's correct.

State: When you confronted him with the prospect of a search warrant or cooperation in the investigation, what was his choice?

Kindig: He said that he would—again, he was a gentleman. He said that "I will work with you." He didn't have a problem with that.

Lafferty never objected to the officers being in his home but there is no evidence that the officers ever asked Lafferty for either oral or written consent to go through his house or to search through his furniture. At the preliminary hearing, Kindig testified that Lafferty "understood" what cooperating with the police officers meant, and that Lafferty assisted them in "retrieving" illegal substances. Kindig also testified that the only act of searching that the officers engaged in was Deputy Nye's act of lifting the couch cushion and finding the container of methamphetamine. The rest of the substances were obtained by Lafferty taking the officers through the home, picking up things and giving them to the officers.

At the suppression hearing Lafferty testified as follows:

Defense: Okay. And then what happened [after Kindig told you he was there to ask you questions about Shane Richardson]?

Lafferty: He says, But from what I see here, it looks like I've got enough probable cause to get a search warrant, unless you want to cooperate. And I knew that I was at that point going to go to jail because I did have some pot leaves and seeds sitting on the table. But I wasn't rolling anything. They were just sitting in front of me.

Defense: Okay. So the officer at that point says, Got enough for a search warrant, you can cooperate. And how did you say you felt?

Lafferty: Just cooperate or go to jail.

Lafferty testified that he was asked to "cooperate." Kindig testified that he asked Lafferty to "work with us and turn over any narcotics." There is no express request to search the couch contained in the evidence adduced at the preliminary hearing or suppression hearing. On cross-examination, the State failed to bring to light any evidence showing that Lafferty was asked to do anything other than "cooperate" with the officers and "turn over" his drugs. Because there is no clear request for consent to search the home, any consent can only be found by inference from Lafferty's conduct and the surrounding circumstances. Although it can be inferred that Lafferty consented to the officers following him as he went through the house picking up marijuana and paraphernalia, it cannot reasonably be inferred from the evidence that Lafferty consented to the officers conducting any search to find items that were not in plain view.

Lafferty walked the officers through his home, finding and producing drugs and paraphernalia. Lafferty located the drugs and items on his own. By their own testimony, the officers never performed any search during this process. Lafferty did not direct the officers to the couch. Lafferty only asked his guests where the drugs were located. The officers then looked under the cushion on the couch, discovering the container of methamphetamine.

We are constrained to hold that, as a matter of law, the evidence elicited regarding consent to search was insufficient to satisfy the State's heavy burden to show that the search of the couch was performed pursuant to the consent exception to the warrant requirement. Because the State has failed to show consent to a warrantless search, the search is unreasonable and a violation of the Fourth Amendment. The evidence obtained from the search must be suppressed.

## III.

### CONCLUSION

Because the officers lacked consent to conduct a warrantless search of the couch, the methamphetamine found in the couch should have been suppressed. Therefore, we reverse the district court's denial of Lafferty's motion to suppress evidence, vacate the judgment of conviction, and remand for further proceedings. Because we dispose of the appeal on this ground, we do not reach the issue of whether the State's evidence was sufficient to establish that Lafferty possessed the methamphetamine.

Chief Judge LANSING and Judge GUTIERREZ, concur.