179 P.3d 341

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Mark Melville MEAD, Defendant–Appellant.**

No. 32959.

Court of Appeals of Idaho.

Feb. 14, 2008.

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Chief Judge.

Mark Melville Mead appeals from his judgment of conviction and sentence for leaving the scene of an accident resulting in injury or death. We affirm.

## I.

## BACKGROUND

Shortly after 10:00 pm on August 2, 2005, Samantha Schink was riding her bicycle on the sidewalk along South Powerline Road in Nampa, Idaho, when she was struck by a car from behind. The force of the impact threw her sideways off her bicycle, resulting in a scrape on her big toe. The driver of the car, later identified as Mead, immediately apologized for hitting Schink and asked her if she was okay. From here, Mead's and Schink's accounts diverge significantly. According to Mead, Schink quickly stood up, and responded that she was fine while walking away from her bicycle. Mead attempted to help her to sit down on the grass next to the sidewalk to make sure she was alright. Schink began screaming, which frightened Mead. Concerned by Schink's hysterical nature, Mead returned to his car.

Schink testified that after being asked if she was okay, Schink was grabbed by Mead. He groped her breast and forced her backwards towards the grass, away from the lights of the car. Scared by the physical contact, Schink began screaming. Mead placed his hand over her mouth and pulled her to the ground. Schink bit him, and Mead moved his hand to her throat. While she fought him on the ground, Mead scratched Schink's chest, and tore the straps of her sports bra and tank-top from her left shoulder. Mead suddenly released Schink when the headlights of a passing car startled him. Schink ran towards the road seeking help.

A Jeep with four teenagers stopped to investigate the collision. Mead got back in his car and sped away with his headlights off. Two of the teenage boys stayed with Schink and tried to calm her down, while the other two remained in the car and followed Mead into a nearby subdivision. Mead's front passenger tire was torn and deflated from the impact with the curb prior to hitting Schink; Mead was driving on nothing but the rim of that wheel. Mead eventually found himself heading out of the subdivision and right back past the location where he struck Schink. She became hysterical again when his car passed by, and the two teenagers with her chased the car on foot while the other two continued pursuit in the Jeep. Mead's car eventually became stuck in the mud on a dead-end road in another subdivision; he fled into a field on foot. The young men in the Jeep notified Nampa police of the location of the car and waited for officers to arrive. In the early morning hours of August 3, officers located Mead walking towards his home in Nampa. After some resistance, and a brief swim in a canal, Mead was arrested and transported to jail.

Mead was indicted for three felonies: attempted rape, I.C. §§ 18–6101, 18–306; battery with intent to commit a serious felony, I.C. §§ 18–903(a), 18–911; and leaving the scene of an accident resulting in injury or death, I.C. § 18–8007. He was also cited for reckless driving, I.C. § 49–1401(1), and resisting and obstructing an officer, I.C. § 18–705, both misdemeanors. A jury found Mead guilty of leaving the scene of an injury accident and the two misdemeanors, but acquitted him of the two remaining felony charges. Mead was sentenced to a unified term of five years, with three years determinate for the felony, to run consecutively to the sentence in an unrelated case. Mead was on felony parole for a rape committed in 1992 at the time of this incident; his parole was revoked prior to sentencing. Mead appeals, challenging only the sufficiency of the evidence to support his conviction for leaving the scene of an injury accident, and the district court's denial of his Idaho Criminal Rule 35 motion requesting relief on the consecutive nature of his sentence.

## II.

### DISCUSSION

#### A. Sufficiency of the Evidence

■ Mead challenges the sufficiency of the evidence to support his conviction for leaving the scene of an injury accident. Specifically, he contends that the injury suffered in this accident, a scraped toe, is below the level of injury contemplated by the statute, and thus there is no evidence of an injury that would support a conviction. The state asserts that any injury, no matter how small, is sufficient to support a conviction, based on the plain meaning of the statute.

Appellate review of the sufficiency of the evidence is limited in scope. A judgment of conviction, entered upon a jury verdict, will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera–Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct.App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct.App.1991). We will not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct.App.1985). Moreover, we will consider the evidence in the light

most favorable to the prosecution. *Herrera–Brito,* 131 Idaho at 385, 957 P.2d at 1101; *Knutson,* 121 Idaho at 104, 822 P.2d at 1001. Because Mead presented evidence after the trial court denied his motion for judgment of acquittal, this Court will review all of the evidence presented, including Mead's testimony. *State v. Cortez,* 135 Idaho 561, 563, 21 P.3d 498, 500 (Ct.App.2001).

 This Court exercises free review over the application and construction of statutes. *State v. Reyes,* 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct.App.2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Rhode,* 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Burnight,* 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar,* 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct.App.2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight,* 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar,* 134 Idaho at 389, 3 P.3d at 67.

Idaho Code Section 18–8007(2) provides that it is a felony for a person to violate any provision of section 18–8007. The requirements of that section are that

[t]he driver of any vehicle that has been involved in an accident, either upon public or private property open to the public, who knows or has reason to know that said accident has resulted in injury to or death of any person shall:

(a) Immediately stop the vehicle at the scene of the accident or as close thereto as possible. Every stop required under this section shall be made without obstructing traffic more than is necessary.

(b) Remain at the scene of the accident until the driver has fulfilled all the requirements under this section.

(c) Give his name, address, the name of his insurance agent or company if he has automobile liability insurance, and the motor vehicle registration number of the vehicle he is driving to the person struck, or to the driver or occupant of or

person attending any vehicle collided with.

(d) If available, exhibit his driver's license to the person struck, or to the driver or occupant of or person attending any vehicle collided with.

(e) Render to any person injured in the accident reasonable assistance, including the conveying or the making of arrangements for the conveying of such person to a physician, surgeon, hospital or other medical facility, for medical or surgical treatment, if it is apparent that such treatment is necessary or if such conveying is requested by the injured person.

I.C. § 18–8007(1). Thus it is clear that a driver involved in an injury accident must do more than simply stop—he must provide his contact information, insurance, registration, and inquire into the nature and extent of the injuries. The word injury is not defined in the criminal code; however its plain meaning is well understood. An injury is "any harm or damage." BLACK'S LAW DICTIONARY 801 (8th ed.2004). A physical or bodily injury is "physical damage to a person's body." *Id.* If the legislature intended any meaning other than the plain and obvious meaning of the word injury, they could easily have chosen to apply this section only to serious physical injury. However, the statute proclaims that any knowledge or basis to know of an injury triggers the further requirements of stopping and staying to provide information and aid.

In this case, Mead clearly did not remain at the scene of the accident; he did not provide his name, contact information, insurance, registration, or display his driver's license. Whether or not these failures constitute a violation of the statute turns on whether Mead knew or reasonably should have known that the accident resulted in an injury to Schink. The injury sustained by Schink, a scraped toe, was relatively minor, but it was nonetheless harm or damage to Schink's person. Mead stated several times to police officers and during his trial that his first concern after hitting Schink on her bicycle was that a crash like that should have caused considerable injury to Schink. He was very worried that she immediately stood

up after the crash and began walking away from her bicycle. Mead testified that he tried to assist her in sitting down so that she would not further harm herself due to the injuries he believed she had sustained in the collision. However, Mead fled the scene prior to completing all of the steps required by statute. Mead did not remain long enough to determine whether Schink was injured. While it is quite fortunate that Schink's injury from the crash was minor, the degree of injury does not eliminate the fact that Schink suffered an injury, and that Mead knew or reasonably should have known she suffered an injury. Mead was required by law to remain at the scene to aid Schink and to provide information to her, which he did not do. Substantial evidence was presented to the jury to support a conviction for leaving the scene of an injury accident.

## B. Excessive Sentence

 Mead also challenges his sentence for leaving the scene of an injury accident, claiming that serving time consecutively to a sentence in an unrelated case is excessive when viewed in terms of the injury to Schink during the accident. Appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct.App.2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). An abuse of discretion will be found only if, in light of the governing criteria, the sentence is excessive under any reasonable view of the facts. *State v. Charboneau*, 124 Idaho 497, 500, 861 P.2d 67, 70 (1993); *State v. Kerchusky*, 138 Idaho 671, 679, 67 P.3d 1283, 1291 (Ct.App.2003). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.

App.1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726–27, 170 P.3d 387, 391–92 (2007). Where reasonable minds might differ as to the length of the sentence, this Court will not substitute its view for that of the district court. *Brown*, 121 Idaho at 393, 825 P.2d at 490; *Kerchusky*, 138 Idaho at 679, 67 P.3d at 1291; *State v. Admyers*, 122 Idaho 107, 108, 831 P.2d 949, 950 (Ct.App.1992). The primary objectives of a sentence of confinement are to protect society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). A sentence need not serve all the sentencing goals or weigh each one equally. *State v. Dushkin*, 124 Idaho 184, 186, 857 P.2d 663, 665 (Ct.App.1993).

 When a defendant faces two or more convictions, the court, in its discretion, may impose sentences to be served concurrently or consecutively. I.C. § 18–308. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

After reviewing the presentence investigation report, and hearing from Schink's mother, the district court openly addressed Mead regarding his extensive criminal history. Mead's first brush with the law occurred when he was still a juvenile. He spent time on juvenile probation before being incarcerated in a juvenile detention camp for seven months. After a series of adult misdemeanors, Mead spent ten years in an Idaho penitentiary for rape. He was released on parole for two and one-half years prior to hitting Schink with his car. Although he appeared to be a model prisoner and parolee, he reported extensive sexual abuse as a child

which led to unhealthy sexual activities as an adult. Although Mead was successfully participating in counseling at the time of his current crime, the court believed he was still a risk to society. The court properly weighed the protection of society with the possibility of rehabilitation and deterrence. The district court did not impose an excessive sentence by requiring that Mead's sentence in this case run consecutively to a sentence in a prior case.

## III.

### CONCLUSION

Mead's conviction for leaving the scene of an injury accident is supported by substantial evidence despite the relatively minor nature of Schink's injury. Mead's sentence is not excessive based upon the nature of the offense and the character of the offender. The judgment of conviction and sentence are affirmed.

Judge PERRY and Judge LANSING concur.