**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36548**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2010 Unpublished Opinion No. 648 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: September 17, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| WARREN NANNEY, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Gregory M. Culet, District Judge.

Judgment of conviction for possession of sexually exploitative material, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant. Elizabeth A. Allred argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent. John C. McKinney argued.

_____

WALTERS, Judge Pro Tem

Warren Nanney appeals from his judgment of conviction for possession of sexually exploitative material, arguing that the district court erred in denying his motion to suppress and by imposing an excessive sentence. We affirm.

**I.**

**BACKGROUND**

Warren Nanney, twenty-nine years old, was arrested on August 2, 2008, after police officers were called to investigate his presence at 1:30 a.m. with a seventeen-year-old female, E.M., at a park in Caldwell. During this investigation, police officers searched Nanney's vehicle and seized several cell phones. Pursuant to a search warrant, the cell phones' contents were searched, and nude photographs of teenage girls were found on one cell phone. Officers determined that one of the girls was C.H. of South Carolina. C.H. had met Nanney online, where he initially told C.H. that he was fifteen but later disclosed his real age. Nanney began

1

requesting nude pictures of C.H. through text messages, which she took and sent to him. C.H. was fourteen at the time she took the pictures. Nanney was charged with possession of sexually exploitative material, Idaho Code §§ 18-1507 and 18-1507A, for having these pictures of C.H on his phone.

Nanney moved to suppress all evidence seized during the search of his car, or obtained as a result thereof, on the ground that the search violated Nanney's federal and state constitutional rights to be free from unreasonable searches and seizures. Nanney argued that the officers conducted the search without a warrant and without any valid exceptions to the warrant requirement. Specifically, Nanney argued that the police did not legally impound his vehicle, and therefore any search pursuant to the inventory exception to the warrant requirement was invalid and any evidence seized should be suppressed.

Prior to an evidentiary hearing on Nanney's motion, the officers at the scene on the night of the incident were asked to write supplemental reports on the issue of Nanney's consent to search his vehicle. Thereafter, at an evidentiary hearing on Nanney's motion, Corporal Eldridge, a coordinating supervisor present on the night of the incident, testified that Nanney's vehicle had indeed been impounded improperly. However, Officer Hessman, a trainee officer present on the night of the incident, testified that Nanney gave him consent to search the car and Eldridge testified that Nanney gave him consent to search the trunk, before the car was improperly impounded. Nanney testified that he did not consent.

Although four officers were at the scene during the time Nanney allegedly gave consent, none were able to produce an audio recording. Two trainee officers testified at the evidentiary hearing that their recorders' batteries died. One officer testified that he deleted his recording after the incident because he was only there in a supervisor capacity and does not normally keep audio recording of a trainee's patrol, as usually it is the trainee's responsibility to make and keep any recording. The fourth officer, Eldridge, testified that he deleted his audio recording as he did not record any conversations with Nanney, just with other officers. He stated that because he was there in a coordinating supervisor capacity, initially he only conversed with other officers and turned off his recording device during this time. Thereafter, when he did approach Nanney, he did not think to turn his recording device back on and therefore did not record any discussion with Nanney. Based on the officers' testimony that recordings were either not taken or were

2

deleted, Nanney supplemented his motion to suppress and argued that the officers violated Nanney's due process rights by destroying material evidence in bad faith.

The trial court found the officers' testimony to be credible and truthful and held that Nanney consented to the search of his vehicle and that the officers, while negligent, had not acted in bad faith by failing to take audio recordings of the incident or by deleting audio recordings that were taken. After the court denied Nanney's motion to suppress, Nanney was granted a lower bond pursuant to several conditions, including that he not access a computer. Nanney violated this condition about a month later and his bond was revoked. Thereafter, Nanney pleaded guilty to possession of sexually exploitative material. He was sentenced to seven years incarceration, with two years fixed. Nanney appealed.

On appeal, Nanney argues that the district court erred in determining that Nanney had consented to the search of his car and in denying his motion to suppress. Nanney asserts that the court erred because the officers' inability to produce audio recordings of Nanney's alleged consent to the search of his vehicle and failure to note the consent in their initial reports, rendered the State unable to meet its burden of proving consent as a valid exception to the warrant requirement. Additionally, Nanney argues that the court erred in not finding the officers' conduct--two officers not taking audio recordings of Nanney's alleged consent, and two officers deleting their audio recordings--was in bad faith and violated Nanney's right to due process. Nanney further contends that the district court erred in fashioning his sentence because the court failed to properly consider Nanney's expression of remorse, mental illness, and family support as mitigating factors, resulting in an excessive sentence that focused more on incarceration than rehabilitation.

## II.

## DISCUSSION

### A.    The District Court Did Not Err in Denying Nanney's Motion to Suppress

Nanney argues the district court erred in determining Nanney consented to the search of his car. The officers' inability to produce audio recordings and failure to note Nanney's consent in their initial reports, Nanney contends, shows the State did not sufficiently prove consent, thereby making the search of Nanney's vehicle a violation of his right to be free from unreasonable searches and seizures. Nanney also takes issue with the court's determination that the officers did not act in bad faith by failing to make audio recordings and by deleting audio

3

recordings of the incident. Because the officers acted in bad faith, the argument goes, Nanney's due process rights were violated. Nanney asserts that these violations of Nanney's constitutional rights required the suppression of the State's evidence obtained as a result of the search.

The review of a suppression motion presents mixed issues of fact and law. *State v. Lafferty*, 139 Idaho 336, 338, 79 P.3d 157, 159 (Ct. App. 2003). When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. McCall*, 135 Idaho 885, 886, 26 P.3d 1222, 1223 (2001); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment and the Idaho Constitution require that all searches and seizures be reasonable. *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000); *State v. Ashworth*, 148 Idaho 700, 702, 228 P.3d 381, 383 (Ct. App. 2010). Warrantless searches are presumptively unreasonable, unless they fall within the few established and well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967); *Ashworth*, 148 Idaho at 702, 228 P.3d at 383. Properly given voluntary consent to search is such an exception. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *State v. Fee*, 135 Idaho 857, 862, 26 P.3d 40, 45 (Ct. App. 2001). The State bears the burden to demonstrate that a warrantless search either fell within a well-recognized exception or was otherwise reasonable under the circumstances. *State v. Araiza*, 147 Idaho 371, 374, 209 P.3d 668, 671 (Ct. App. 2009); *State v. Martinez*, 129 Idaho 426, 430, 925 P.2d 1125, 1129 (Ct. App. 1996). The State must prove the warrant exception by a preponderance of the evidence. *Cf. United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) (stating that the controlling burden of proof at suppression hearings should be by a preponderance of the evidence); *State v. Thorpe*, 141 Idaho 151, 153, 106 P.3d 477, 479 (Ct. App. 2004) (holding that the State must show consent was given freely and voluntarily by a preponderance of the evidence). If the State fails to meet its burden, evidence acquired as a result of an illegal search, including later-discovered evidence derived from the original illegal search, is inadmissible in court. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003); *State v. Brauch*, 133

4

Idaho 215, 219, 984 P.2d 703, 707 (1999). *See also Segura v. United States*, 468 U.S. 796, 804 (1984).

The right to due process requires that criminal prosecutions comport with prevailing notions of fundamental fairness. *California v. Trombetta*, 467 U.S. 479, 485 (1984); *State v. Lewis*, 144 Idaho 64, 66, 156 P.3d 565, 567 (2007). Fundamental fairness requires a meaningful opportunity to present a defense, which in turn requires "what might loosely be called the area of constitutionally guaranteed access to evidence." *Trombetta*, 467 U.S. at 485; *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982); *Lewis*, 144 Idaho at 66, 156 P.3d at 567. "Access to evidence" imposes upon the State a duty to disclose material and exculpatory evidence known to, or in the possession of, the State. *Id.* at 66-67, 156 P.3d at 567-68. Failure to preserve evidence, "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant" does not violate due process "unless a criminal defendant can show bad faith on the part of the police." *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988)). Whether the police acted in bad faith depends upon the nature of the proceeding, nature of the evidence, and the circumstances surrounding the destruction of the evidence. *Lewis*, 144 Idaho at 67, 156 P.3d at 568. Bad faith is more than mere negligence, it is "a calculated effort to circumvent . . . disclosure requirements." *Id*. (quoting *Trombetta*, 467 U.S. at 488).

In this case, the district court did not err in concluding that Nanney had given consent for officers to search his car. The district court was faced with contradictory testimony; Nanney testified that he did not consent to the search, while Corporal Eldridge and Officer Hessman testified that Nanney did consent to the search. As stated in *Valdez-Molina* and *Schevers*, determining witness credibility is the province of the trial court and there is substantial and competent evidence to support the district court's factual determination that the officers' version of the incident was more credible and truthful than Nanney's. *See State v. Aitken*, 121 Idaho 783, 785, 828 P.2d 346, 348 (Ct. App. 1992). Nanney appears to agree with this conclusion by taking the position at oral argument, in response to the Court's questions, that he is not attacking consent but taking the approach that bad faith overrides the issue of consent. As Nanney agreed that the central issue on appeal is the bad faith issue, we will not address the consent issue further.

5

We hold the district court did not err in determining that the officers had not acted in bad faith. Although the lack of audio recordings amongst the four responding officers and the failure to mention consent in their initial reports does appear suspicious on its face, the officers were able to sufficiently explain these anomalies. For example, the two trainees testified that they did not realize their batteries had died, and one of the training officers testified that he was not there in a responding officer capacity but as a supervisor and therefore it was not his general practice to make reports or keep audio. Eldridge testified that he deleted his audio as he had not captured any conversations with Nanney, admittedly due to his own thoughtlessness in not turning his recording device back on when he approached Nanney. Nanney's argument--that the officers' failure to follow department protocol, to get written consent to search in the absence of audio recording of consent, shows bad faith--is unavailing. This is because the officer who got the consent believed that he was recording the encounter and therefore had no reason to also get written consent. It was only later that he realized the batteries in his recording device had died. No officer was aware of the lack of audio recording at the time of the search and therefore, believing the consent was recorded, were not failing to follow protocol.

Additionally, the officers testified that after the motion to suppress was filed, the lead detective on the case, apparently only realizing at that point that no report mentioned Nanney's consent, asked for supplemental reports addressing the issue. This does not mean, as Nanney suggests, that the officers were requested to invent a story about Nanney giving consent; indeed two of the officers consistently stated that they did not ever hear Nanney give consent but were just told that he did by other officers. On the contrary, it appears from the officers' testimony that the police were simply inattentive in not realizing that the relevant reports were factually incomplete until after the motion to suppress made the validity of the search an issue, thereby requiring supplementation on a factual circumstance that was present but theretofore not mentioned.

As the officers were forthcoming about their explanations for not creating or deleting recordings, however negligent and careless, and reasons for submitting supplementary reports, there is substantial factual support for the conclusion that the officers' conduct did not amount to a bad faith attempt to circumvent disclosure requirements. Therefore, we uphold the district court's determination that the officers did not act in bad faith and Nanney's right to due process was not violated.

**B.      The District Court Did Not Abuse its Discretion in Fashioning Nanney's Sentence**

Nanney argues that his seven-year sentence, with two years fixed, is excessive because the court failed to properly consider Nanney's expression of remorse, mental illness, and family support as mitigating factors.

Where a sentence is within the statutory limits, it will not be disturbed on appeal absent an abuse of the sentencing court's discretion. *State v. Hedger*, 115 Idaho 598, 604, 768 P.2d 1331, 1337 (1989); *State v. Stone*, 147 Idaho 330, 334, 208 P.3d 734, 738 (Ct. App. 2009). We will not conclude on review that the sentencing court abused its discretion unless the sentence is unreasonable under the facts of the case. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992); *State v. Bowcut*, 140 Idaho 620, 621, 97 P.3d 487, 488 (Ct. App. 2004); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). The objectives of sentencing, against which the reasonableness of a sentence is to be measured, are the protection of society, the deterrence of crime, the rehabilitation of the offender, and punishment or retribution. *Id*. A sentence need not serve all the sentencing objectives or weigh each one equally. *State v. Mead*, 145 Idaho 378, 382, 179 P.3d 341, 345 (Ct. App. 2008); *State v. Dushkin*, 124 Idaho 184, 186, 857 P.2d 663, 665 (Ct. App. 1993). The primary objective, as a matter of Idaho policy, is the good order and protection of society; all other objectives are subservient to this end. *State v. Hunnel*, 125 Idaho 623, 627, 873 P.2d 877, 881 (1994); *State v. Jensen*, 137 Idaho 240, 245, 46 P.3d 536, 541 (Ct. App. 2002). In evaluating the reasonableness of a sentence, we conduct an independent review of the record, focusing on the nature of the offense and the character of the offender. *Stone*, 147 Idaho at 334, 208 P.3d at 738; *State v. Young*, 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct. App. 1991).

The district court did not abuse its discretion in sentencing Nanney because it properly considered and balanced the objectives of sentencing. The district court specifically mentioned that it had considered all sentencing factors, but then went on to discuss its concern about Nanney being a danger to society and young girls. The court specifically commented on Nanney's predatory nature towards adolescent girls, how Nanney admitted to taking steps to gain their trust, such as lying about his age, so that he could develop relationships with them. This concern was highlighted by the psychosexual evaluator's conclusion that Nanney was at a high risk to re-offend and by the fact that Nanney, when given the chance at presentencing release from incarceration, quickly violated the terms of his release by accessing a computer, the very

means by which he contacted his prior victims. Therefore, though Nanney may be able to claim mitigating factors, the district court did not err in focusing on the primary consideration of sentencing in Idaho, the protection of society, and concluding that Nanney's danger to society was such that a lengthy sentence of incarceration was warranted.

Furthermore, Nanney's contention that he is remorseful for his actions is belied by the record. Although Nanney did state he was remorseful, other statements suggest this was disingenuous. For example, he expressed to the psychosexual evaluator that he did not think his actions were morally wrong or that sexual behavior with adolescent females was inappropriate, but "merely illegal." In terms of rehabilitation, he did not feel he needed sex offender treatment and stated, "If I have to take [rehabilitation classes], I'll take em. [sic] I may grumble and drag my feet, but I'll take them." Nanney also made statements to the presentence investigator that he was not harming his victims, but instead was helping them. Such statements show that Nanney is not remorseful; again highlighting the district court's concern that Nanney is at a high risk to re-offend as he does not see his actions as wrong.

Nanney's sentence is not unreasonable considering Nanney's predatory nature towards adolescent girls, lack of true remorse, and high risk to re-offend. These factors support the court's conclusion that Nanney is a danger to society. The court did not err in determining that protection of society outweighed any other mitigating factors. Therefore, we hold that the district court did not abuse its discretion in sentencing Nanney.

### III.
### CONCLUSION

The district court did not err in denying Nanney's motion to suppress, and Nanney's seven-year sentence, with two years fixed, is not excessive. Therefore, we affirm Nanney's judgment of conviction.

Judge MELANSON **CONCURS.**

Judge GUTIERREZ, **SPECIALLY CONCURRING**

I concur in the majority opinion upholding the district court's ruling denying Nanney's motion to suppress evidence. I write separately to emphasize that while credibility is within the province of the trial court, these courts should take care to analyze all factors previously articulated by this Court that weigh heavily in determining credibility. For example, and of

particular importance to this case, a court should take into account the absence of an audio recording when analyzing credibility issues.

We have previously stated that "[a] trial court most certainly may consider the absence of a recording, when the interrogating officer conveniently could have made one, in evaluating the officer's credibility" and the "failure to record . . . may be a factor in assessing the accuracy and truthfulness of the officer's account of the event." *State v. Dominguez*, 137 Idaho 681, 684, 52 P.3d 325, 328 (Ct. App. 2002); *In re Doe*, 130 Idaho 811, 815, 948 P.2d 166, 170 (Ct. App. 1997). In *Dominguez,* the defendant challenged the trial court's factual finding that the officer was given consent to search his wallet. *Dominguez*, 137 Idaho at 683, 52 P.3d at 327. The sole evidence on this issue was the testimony of the officer and the testimony of a passenger in the defendant's car who allegedly gave consent. *Id.* at 682-83, 52 P.3d at 326-27. The officer who searched the wallet had made an audio recording of the incident but suspiciously stopped the recording during the critical point in the conversation where the officer insisted the passenger gave him consent and the passenger insisted otherwise. *Id.* at 683-84, 52 P.3d at 327-28. Though we ultimately determined the trial court's finding that the officer's testimony was credible was supported by substantial evidence based on the great deference with which we must review a trial court's credibility determinations, we nevertheless cautioned that the tape recording in that case gave "reasons to be skeptical about Officer Carter's testimony." *Id.* at 684, 52 P.3d at 328. We reiterated then, as I do now, that an officer's failure to capture his or her version of events through the use of a readily accessible recording device when he or she could have conveniently done so should weigh heavily in determining officer credibility. This analysis reasonably extends to the similar situation of an officer deleting such a recording, and the trial court should examine credibility with a critical eye in such a situation as well. This is especially so in the context of the instant case where it is the state's burden to prove an exception to the warrant requirement, and thus, the officer's version of events.

It should be noted that officers' training and experience are considered in other Fourth Amendment contexts, such as determining whether an officer had reasonable and articulable suspicion to justify a stop, *see e.g. Terry v. Ohio*, 392 U.S. 1, 27, 31 (1968); *Wheeler v. Idaho Transp. Dep't.*, 148 Idaho 378, 383, 223 P.3d 761, 766 (Ct. App. 2009), and should also be a factor to consider on credibility issues. In this case, the district court determined that the officers' explanation for the absence of audio recordings was sufficient to meet the State's

burden to prove the existence of the consent exception to the warrant requirement. However, this determination becomes harder to support when considering the unique combination of training and experience present in this case. Officer Hessman, the only officer able to testify that Nanney gave consent to search the vehicle, had received no less than thirteen weeks of classes and eight weeks of field training experience on the night Nanney was arrested. He had been trained to record all contacts, and trained on the exceptions to the Fourth Amendment warrant requirement and their importance (and presumably on the use and maintenance of equipment). This training and experience, coupled with the Caldwell Police Department policy that when consent to search is given, written or recorded evidence of such consent should be gathered, makes Hessman's explanation for why he did not record Nanney's consent highly suspicious.

Another suspicious recording anomaly is Corporal Eldridge's selective recording of the incident. Eldridge is a POST-certified corporal who trains other officers and coordinates their efforts during crime investigations. He has been trained in the importance of exceptions to the warrant requirement and testified that where pertinent information is gathered it is Department policy to record the contact. When such a highly-trained officer states that he "just didn't even think about turning [his recorder] on" when he approached a suspect to get consent to search a portion of the suspect's vehicle, such a statement is exceedingly questionable. Even Corporal Eldridge's explanation that he assumed one of the other officers would be recording is suspect, as a supervising superior officer would be expected to know that he is responsible for capturing any consent he obtains from a suspect and not to rely on being able to borrow another officer's recording of the incident after the fact.

A trial court can also be skeptical, given the emphasis in training given to all the officers on warrant exceptions and their necessity as well as in writing reports, of any contention that consent was not mentioned in initial reports simply out of neglect. The improbability of this excuse is highlighted by the fact that all the reports were reviewed by Corporal Eldridge before being submitted to the lead detective. Based on Corporal Eldridge's heightened training and experience as outlined above, a court can be reasonably unconvinced by his excuse that he had "just missed" that no one had mentioned consent, the only legal basis that gave them the right to search Nanney's vehicle.

Taking into account these facts and the unique circumstances involved, the district court would have been equally justified in granting Nanney's motion to suppress.